IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01194-WJM-MEH

ALIREZA VAZIRABADI,

      Plaintiff,

v.

TOM BOASBERG, in his individual and official capacities,
TERRI SAHLI, in her individual and official capacities,
DENVER PUBLIC SCHOOLS,
JOHN AND JANE DOES 1 THROUGH 20,
JOHN DOE CORPORATIONS 1 THROUGH 10, and
JOHN DOE ENTITIES 1 THROUGH 10, all whose true names are unknown,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Alireza Vazirabadi ("Vazirabadi"), proceeding *pro se*, initiated this employment

discrimination action against Denver Public Schools ("DPS") and the individual Defendants, Tom

Boasberg ("Boasberg") and Terri Sahli ("Sahli") (collectively, "DPS Defendants") on May 15, 2017.

Vazirabadi filed the operative First Amended Complaint as a matter of course on July 14, 2017

alleging essentially that Defendants violated his rights under the Fourteenth Amendment to due

process and equal protection of the law and under the First Amendment's Establishment Clause

(religious discrimination) by engaging in "extreme vetting" of his employment application, and

violated Title VII of the Civil Rights Act of 1964, as amended ("Title VII") based on Vazirabadi's

national origin.  *See* First Amended Complaint ("FAC"), ECF No. 26.

      The DPS Defendants filed the present motion to dismiss in response to the FAC on July 28,

2017, arguing that Vazirabadi's facts support neither his constitutional claims nor his Title VII

national origin claim and he has failed to exhaust administrative remedies as to any claim for religious discrimination under Title VII. Construing the allegations liberally and taking them as true, the Court finds that Vazirabadi fails to state violations of his constitutional rights, but plausibly states a violation of Title VII and, thus, the Court recommends that the DPS Defendants' motion be granted in part and denied in part.

## I.      Statement of Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Vazirabadi in the operative FAC, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On or about August 3, 2015, Vazirabadi responded to the DPS Defendants' job advertisement for the position of Process Improvement Engineer ("PIE"), which required five years' experience. His response included submission of his Industrial Engineer resume with a two-page cover letter itemizing the job requirements against his ten-plus years of direct experience. The advertised position did not require or prefer bilingual applicants. Vazirabadi registered at careers.dpsk12.org to submit his resume and cover letter and was asked to answer certain questions. For example, from a pull-down menu listing "Arabic," "Somali," "Amharic," and "Swahili" languages, Vazirabadi was asked in which of the languages he is bilingual. The menu also stated: "If your language was not listed above... please indicate it here." Vazirabadi entered "Farsi/Persian" as his other language, which Vazirabadi believes identified him as Iranian and Muslim.

A report attached to the FAC reflects that in 2014, DPS had enrolled a total of 87,389 students and, of those students, 1,605 (or 1.84%) were "Non-Exited" English Language Learners ("ELLs"). FAC Ex. 2.[1] The top five languages (making up the majority of the ELLs) spoken were

---

[1]The Court may consider certain documents without converting a Rule 12(b)(6) motion to one for summary judgment, including documents attached to the complaint and "documents referred

Arabic, Vietnamese, Somali, Nepali, and Amharic. *Id.*

On or about August 31, 2015, Vazirabadi had his first interview by telephone with DPS's hiring manager, Karen J., who states she was "drawn" to his application by his "meticulous" itemization of job requirements against matched experience. Karen J. told Vazirabadi that he would be considered for two open PIE positions. On or about September 10, 2015, Vazirabadi met with Karen J. and DPS's Process Improvement team members, Jeff G., Katie W., and Andrea M., for a sixty-minute in-person panel interview. Vazirabadi believed he had great interaction and chemistry with the panel members. During the last ten minutes of the interview, the panel members asked Vazirabadi to facilitate the meeting for an outside group activity. Vazirabadi believed he performed "greatly." Just before he left the interview room, Jeff G. asked him, "do you like to be called Alireza or Ali?" Vazirabadi noticed the other panel members awaiting his response and he answered, "Ali." Vazirabadi considered this question to be a positive indication of his interview performance. Then, on September 15, 2015, Vazirabadi met with Defendant Sahli, Director of Enterprise Risk Management and Process Improvement, for a thirty-minute interview.

On or about September 23, 2015, Karen J. emailed Vazirabadi to inform him that "it was a tough decision and, in the end, we decided on other candidates." Reading this email made Vazirabadi feel emotionally and physically sick, numb, humiliated, and rejected, because he was "100% sure" he had the perfect experience and educational background for the position and performed well in the interviews.

The candidates hired by DPS for the PIE positions were a "28-year-old Asian male" and a "29-to-33-year-old" female whose national origin is not indicated.

---

to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted).

## II. Legal Standards[2]

### A. Dismissal under Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678-80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff

---

[2]In addition to the standards set forth here, Defendants argued Vazirabadi failed to exhaust his administrative remedies for any claim for religious discrimination under Title VII, which would be analyzed under Fed. R. Civ. P. 12(b)(1). However, Vazirabadi confirmed in his response brief that he does not allege a claim for religious discrimination under Title VII. Resp. 4. Therefore, the Court's discussion need not include an analysis pursuant to Rule 12(b)(1).

has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

B.      Treatment of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. N. M.*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188,

1197 (10th Cir. 1989)).

## III.    Analysis

### A.    Section 1983 – Official-Capacity Claims

#### 1.    Boasberg and Sahli

The Court finds first that Plaintiff's official-capacity claims against Boasberg and Sahli are duplicative of his claims against DPS. "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cnty .Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)); *see also Watson v. City of Kan. City*, 857 F.2d 690, 695 (10th Cir. 1988) (treating as one claim the plaintiff's claim against a municipality and claims against municipal officials acting in their official capacities). As the Supreme Court explained, "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against an entity." *Ky. v. Graham*, 473 U.S. 159, 165-66 (1985) (citations and quotations omitted).

Consequently, where a plaintiff sues both the municipality and municipal official in an official capacity under the same theory of recovery, courts have dismissed the official capacity claim as "duplicative" or "redundant" of the claim against the municipal entity. *Barr v. City of Albuquerque*, No. 12-CV-01109-GBW, 2014 WL 11497831, at *13 (D. N.M. Apr. 8, 2014) (citing *Starrett v. Wadley*, 876 F.2d 808, 813 (10th Cir. 1989) (despite presence of official capacity claim, "the appeal effectively is between only two parties: the County and plaintiff")); *see also Doe v. Douglas Cnty. Sch. Dist.*, 775 F. Supp. 1414, 1416 (D. Colo. 1991) ("redundant" official capacity claim dismissed); *Riendl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1302 (D. Kan. 2005) (same).

As such, the Court respectfully recommends that Plaintiff's claims against Defendants Boasberg and Sahli in their official capacities be dismissed. *See Hays v. Ellis*, 331 F. Supp. 2d 1303, 1306 n.2 (D. Colo. 2004).

2.      DPS

"[M]unicipal defendants—public school districts and school boards included—can't be held liable under 42 U.S.C. § 1983 solely because they employ a person who violated the plaintiff's constitutional rights." *Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 794 (10th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff.") (quoting *Monell*, 436 U.S. at 692).  Hence, local governments can be liable under Section 1983 "only for their *own* illegal acts." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (internal quotation and citations omitted) (emphasis in original)..

Thus, to establish a Section 1983 claim against a municipality, a plaintiff must "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury" by plausibly alleging (1) the existence of a municipal policy or custom, (2) causation, and (3) state of mind. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

In establishing the first requirement, a plaintiff may show a municipal policy or custom in the form of any of the following:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions - and the basis for them - of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries

that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quoting *Brammer-Hoetler v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189-90 (10th Cir. 2010)) (internal quotations omitted).

Here, Vazirabadi's allegations supporting his First, Second, and Fifth Claims for Relief, taken as true and liberally construed, assert that DPS' online employment application system, which seeks information as to whether the applicant is bilingual and, if so, in what language, violated his rights against national origin and religious ("Muslim") discrimination by subjecting him to "extreme vetting" which is governed by a formal policy, or serves as an informal custom/widespread practice, or is the result of a decision by a final policymaker, Defendant Superintendent Boasberg. *See* FAC ¶ 40 ("Such targeted software application could not just appear on its own, without [the] highest direct approval, funding and support in the organization by established policy, procedure and customs.").

Plaintiff also alleges for his Fourth Claim for Relief that DPS subjected him to a "warrantless search" by its "extreme vetting," which he describes as an "out of [the] norm background check that not-bilingual [sic] applicants do not experience."[3] FAC ¶ 62. The Court finds these allegations, liberally construed, involve the same policy or custom underlying the online application system.

Finally, Plaintiff alleges for his Third Claim for Relief that DPS made false assertions and provided "altered" documents to the Equal Employment Opportunity Commission ("EEOC") during its investigation of the Plaintiff's Title VII claim. FAC ¶ 55. Vazirabadi alleges no municipal policy nor custom underlying DPS's submission to the EEOC and, thus, the Court will recommend dismissing this claim against DPS.

---

[3]Considering Vazirabadi's repeated use of the "warrantless search" language, the Court will liberally construe this claim as brought under the Fourth Amendment, rather than under the Fourteenth Amendment's due process clause. FAC 17, 24.

Because Vazirabadi alleges the existence of a municipal policy, custom, or final decision in the form of DPS's online employment application system, which seeks information concerning its applicants' proficiencies for second languages for the purpose of subjecting these applicants to extreme vetting, the Court must determine whether his allegations are plausible for a municipal liability claim.

"When a policy is not unconstitutional in itself, the county cannot be held liable solely on a showing of a single incident of unconstitutional activity." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (citation omitted); *abrogated on other grounds as recognized in Schneider*, 717 F.3d at 767. Consequently, "[w]here a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (citation omitted); *see also Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under [*Monell*] unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Here, DPS asserts that Vazirabadi fails to establish the online system constitutes a "custom" or "widespread practice" because he "identifies no other specific job applicants who were subjected to extreme vetting" due to the questions seeking bilingual proficiency. Mot. 5–6. The Court agrees that Vazirabadi's allegations identify only a single incident of discrimination—Defendant Sahli's extreme vetting based on national origin and religion—and, thus, Vazirabadi must allege that the system itself is illegal and was implemented by a person with authority to make policy decisions on behalf of DPS. At this early stage of the litigation during which no discovery has occurred, and

taking Vazirabadi's allegations as true, the Court recommends finding he plausibly alleges the existence of a municipal policy sufficient to meet the first requirement. *See* FAC ¶ 40 ("Defendant's [sic] bilingual application design, creation and deployment require multi-department involvement within Defendants' organization from the highest level (Superintendent Boasberg) to Information Technology (IT) and Human Resources, each contributing according to expertise and responsibilities for its creation, development, implementation, usage and distribution of collected data back into Defendants' organization.").

Second, Vazirabadi must allege plausibly that his stated injuries were caused by the extreme vetting implemented from information obtained by DPS's online employment application system. To establish the causation element, the challenged policy or practice must be "closely related to the violation of the plaintiff's federally protected right." *Schneider*, 717 F.3d at 770 (quoting Martin A. Schwartz, Section 1983 Litigation Claims & Defenses, § 7.12[B] (2013)). This requirement is satisfied if the plaintiff shows that "the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Bd. of Cnty. Comm'rs v. Brown,* 520 U.S. 397, 404 (1997)). Vazirabadi must therefore "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

As set forth above, Vazirabadi's allegations, taken as true and construed liberally, assert that DPS implemented its online employment application system with questions regarding an applicant's bilingual proficiency (particularly in Somali, Amharic, Arabic, Ethiopian, and Farsi languages) for the purpose of subjecting any such bilingual applicants to "extreme vetting." The Court finds Vazirabadi's allegations do not demonstrate the alleged challenged practice—profiling applicants for special investigation—is closely related to DPS's failure to hire him. Vazirabadi alleges:

> Defendant, Terri Sahli, without any legal reason, solely because of Plaintiff's bilingual confirmation, subjected him to extreme vetting. Terri Sahli accomplished

10

this vetting by her access to various online databases, which upon Discovery, Plaintiff will be able to identify exact databases she accessed. Of course, until completion of Discovery, Plaintiff will not be able to present the Court what exact database or method Defendant used for Plaintiff extreme vetting, but Defendant's position, as Enterprise Risk Management under color of law gives her wide range of government and non-government database access.

Plaintiff presented evidence that he was perfectly qualified and had excellent interviews and great chemistry with the interview panel members, yet all of a sudden, out of nowhere, he got rejected with no explanation or reason. All circumstantial evidence leads to Terri Sahli's role and her access to restricted databases to subject Plaintiff to extreme vetting. Plaintiff finds Sahli equally responsible, in official and individual capacities, for Plaintiff's deprivation of Due Process and loss of Property Interest.

FAC ¶¶ 60, 61. These allegations, even taken as true, reflect nothing more than speculation that Defendant Sahli engaged in any "extreme" vetting of Vazirabadi's application through "access to various online databases." Varizabadi alleges no indication of actual search results, whether electronic or otherwise, by Sahli culminating in the rejection of his application. His baseless assertion that "all of a sudden, out of nowhere, he got rejected" is insufficient to demonstrate that Sahli engaged in "extreme" vetting of his application, particularly considering the ranking he received following his in-person interview which, contrary to Vazirabadi's contention, reflects he ranked last (5 out of 5) of those selected for in-person interviews. FAC Ex. 9, ECF No. 26 at 40.[4]

Accordingly, the Court finds Vazirabadi fails to allege plausibly that DPS's rejection of his application was directly caused by any "profiling for extreme vetting" by the Defendants and, thus, recommends that the District Court grant the motion to dismiss Vazirabadi's First, Second, Third,

---

[4]Vazirabadi alleges that this document's "metadata" reveals that the "originator" of the document is "Starecki Kim, DPS Attorney" and reflects that the document underwent "ample changes." FAC ¶ 30. However, even if changes were made to the document "2-3 months after [the] interview" (FAC ¶ 31), such information does not demonstrate the information contained in the document is contrived or otherwise untrue; rather, Vazirabadi's allegations are nothing more than speculation.

Fourth, and Fifth Claims for Relief against DPS.[5]

B.    Section 1983 – Individual-Capacity Claims

As set forth above, Vazirabadi alleges First (Establishment Clause), Fourth (warrantless search), and Fourteenth (due process and equal protection) Amendment claims against the individual Defendants.  The Defendants assert they are, in their individual capacities, entitled to qualified immunity from liability for Vazirabadi's claims.  Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). "The privilege is an immunity from suit rather than a mere defense to liability." *Id.*

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis

_____

[5]Unlike his Title VII claim against DPS in which Vazirabadi alleges a "failure to hire," Vazirabadi focuses on the Defendants' alleged "extreme vetting" for his constitutional claims. *See* FAC ¶ 44 ("Defendants reaped liability for Plaintiff's Cause of Actions for targeting bilingual job applicants for extreme vetting." (First Claim for Relief)); ¶ 50 ("Plaintiff alleges Defendants subjected him to extreme vetting because of his bilingual confirmation that not-bilingual [sic] applicants do not experience." (Second Claim for Relief)); ¶ 60 ("Defendant Terri Sahli . . ., solely because of Plaintiff's bilingual confirmation, subjected him to extreme vetting." (Fourth Claim for Relief)); ¶ 68 ("Defendants' conduct in identifying and classifying job applicants from Muslim[ ] Middle East and African countries for extreme vetting clearly shows, under color of law, the depth of animus against this class of people." (Fifth Claim for Relief)).  In addition, Vazirabadi alleges Defendants submitted "false statements" and "doctored documents" to the EEOC for his Third Claim for Relief.  FAC ¶ 56.

should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555

U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

In this case, the Court will first determine whether Vazirabadi has stated plausible violations of his constitutional rights and, if he has, the Court will next determine whether that right was clearly established.

1.    Fourteenth Amendment Due Process Claims (First and Third Claims)

A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he had a protected property right. *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th Cir. 2009) (citing *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). "Protected property interests arise, not from the Constitution, but from state statutes, regulations, city ordinances, and express or implied contracts." *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1206 (10th Cir. 1998); *see also O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015) (same). The Tenth Circuit has "recognized that 'if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a property interest' protected by the procedural due process clause." *Potts*, 551 F.3d at 1192 (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).

Vazirabadi argues that his property interest in the PIE position arises from his "legitimate claim of entitlement" to the position based on his having been ranked "higher" than other candidates following the telephone interviews and having been ranked "highest" after the in-person interviews. Resp. 13. Even taking these allegations as true, the Court rejects Vazirabadi's argument as not supported by prevailing law. Vazirabadi fails to identify any "rights" he might have that were "created by state statutes, state or municipal regulations or ordinances, [or] contracts" with DPS to be hired for the PIE positions. Moreover, he has alleged no "substantive restrictions on a [DPS

official's] ability to make personnel decisions" with respect to hiring for the PIE positions. *See, e.g., McDonald v. City of St. Paul*, 679 F.3d 698, 705 (8th Cir. 2012) ("Even if the mayor was constrained to appoint from the initial list of three finalists, the fact that an appointment from that list still would have been subject to the approval of the city council prevents McDonald from possessing a legitimate claim of entitlement to the director position.").

For Vazirabadi's failure to show he possessed a protected property right in the PIE positions, the Court recommends that the District Court find Sahli and Boasberg are entitled to qualified immunity for Vazirabadi's failure to state his due process claims and grant the motion to dismiss Vazirabadi's First and Third Claims for Relief against the Defendants.

### 2. Fourteenth Amendment Equal Protection Claims (Second Claim)[6]

The Equal Protection Clause is implicated when the government makes class-based decisions in the employment context, treating distinct groups of individuals categorically differently. *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 605 (2008). To state a claim for an equal protection violation, a plaintiff must allege that a government actor intentionally discriminated against him or her on the basis of a suspect class. *Lobato v. N.M. Env't. Dep't, Envtl. Health Div.*, 838 F. Supp. 2d 1213, 1223 (D.N.M. 2011) (citing *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)); *see also Ingram v. Cooper*, 163 F. Supp. 3d 1133, 1139 (N.D. Okla. 2016) ("To establish a violation of the Equal Protection Clause, a plaintiff must allege that a defendant acted with the intent to discriminate against the plaintiff because of the plaintiff's protected status."). Suspect classifications include those based on national origin. *Lobato*, 838 F. Supp. 2d at 1223 (citing *Edwards v. Valdez*, 789 F.2d 1477, 1482 (10th Cir. 1986)); *Ingram*, 163 F. Supp. 3d at 1139 (citing *City of Cleburne v.*

---

[6]The applicability of Title VII does not interfere with Vazirabadi's right to sue under the Equal Protection Clause. The Tenth Circuit has ruled that "[i]f a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application." *Starrett* , 876 F.2d at 814.

*Cleburne Living Ctr.*, 473 U.S. 432 (1985) and *Ramirez v. Dep't of Corrs.*, 222 F.3d 1238, 1243

(10th Cir. 2000)).

> [I]ntentional discrimination can be demonstrated in several ways. First, a law or
> policy is discriminatory on its face if it expressly classifies persons on the basis of
> race or gender. *See Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 213, 227–29,
> 115 S. Ct. 2097, 2105, 2112–14, 132 L. Ed.2d 158 (1995). In addition, a law which
> is facially neutral violates equal protection if it is applied in a discriminatory fashion.
> *See Yick Wo v. Hopkins*, 118 U.S. 356, 373–74, 6 S. Ct. 1064, 1072–73, 30 L. Ed.
> 220 (1886). Lastly, a facially neutral statute violates equal protection if it was
> motivated by discriminatory animus and its application results in a discriminatory
> effect. *See Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429
> U.S. 252, 264–65, 97 S. Ct. 555, 563, 50 L. Ed.2d 450 (1977).

*Hayden*, 180 F.3d at 48; *see also SECSYS, LLC v. Vigil*, 666 F.3d 678, 685–86 (10th Cir. 2012)

(same). Discriminatory intent "requires that the decisionmaker ... selected or reaffirmed a particular

course of action at least in part 'because of,' not merely 'in spite of' the law's differential treatment

of a particular class of persons." *SECSYS, LLC*, 666 F.3d at 685 (quoting *Personnel Adm'r of Mass.

v. Feeney*, 442 U.S. 256, 279 (1979)).

In this case, Defendants argue the prevailing law provides that "language, by itself, does not

identify members of a protected class, to support an equal protection claim" and "[c]lassifying

applicants based on their proficiency in other languages is not unconstitutional." Mot. 9 (internal

quotations and citations omitted). In other words, an online employment system that asks applicants

whether they are bilingual and, if so, in what language does not itself violate the Equal Protection

Clause. The Court agrees. *See, e.g., Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir. 1983) ("the

Secretary's failure to provide forms and services in the Spanish language, does not on its face make

any classification with respect to Hispanics as an ethnic group.").

But, as in *Soberal-Perez*, Vazirabadi's claim is that DPS's employment system, although

neutral on its face, nevertheless discriminates against Muslim Iranians by its application to "profile"

Muslim Iranian's applications for "extreme vetting." "[F]acially neutral conduct can constitute

discrimination in violation of the Equal Protection Clause; however, such a claim requires that a plaintiff show an intent to discriminate against the suspect class." *Soberal-Perez*, 717 F.2d at 41–42; *see also SECSYS, LLC*, 666 F.3d at 685. Here, Vazirabadi fails to allege the requisite intent. As set forth above, his allegations that Sahli engaged in "extreme" vetting of Vazirabadi's application through "access to various online databases" have no foundation and are merely speculative. Vazirabadi's other allegations, taken as true, demonstrate that DPS officials selected Vazirabadi for a telephone interview, a panel interview, and a final interview with Sahli, all the while knowing that Vazirabadi spoke "Farsi/Persian" based on his answer on the initial online application.

For Vazirabadi's failure to plausibly allege an "intent to discriminate against the suspect class," the Court recommends that the District Court find Sahli and Boasberg are entitled to qualified immunity for Vazirabadi's failure to state an equal protection claim and grant the motion to dismiss his Second Claim for Relief.

### 3. Fourth Amendment Warrantless Search Claims (Fourth Claim)

Although Vazirabadi brings his Fourth Claim for Relief under the Fourteenth Amendment, he alleges the Defendants engaged in a "warrantless search" by conducting a "totally different and out of [the] norm background check that not-bilingual applicants do not experience." FAC ¶ 62. The Court liberally construes these allegations as rasing a Fourth Amendment claim for warrantless search or seizure.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "A search subject to Fourth Amendment protection occurs 'when the

government violates a subjective expectation of privacy that society recognizes as reasonable.'" *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.* (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528–29 (1967)).

The Court will recommend that the District Court find Sahli and Boasberg are entitled to qualified immunity for Vazirabadi's failure to state a Fourth Amendment claim and grant the motion to dismiss Vazirabadi's Fourth Claim for Relief. Again, the allegations, taken as true, show only that Vazirabadi *supposes* that Sahli engaged in an "out-of-the-norm" background check; the allegations reflect no indication that such "extreme" check actually occurred. Vazirabadi's assertion that "[a]ll circumstantial evidence leads to Terri Sahli's role and her access to restricted databases to subject Plaintiff to extreme vetting" (FAC ¶ 61) is pure speculation and insufficient to demonstrate that the "warrantless search" Vazirabadi alleges plausibly occurred. Thus, the allegations fail to state a claim under Rule 12(b)(6).

4.     First Amendment Establishment Clause Claims (Fifth Claim)

The First Amendment to the Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." The Fourteenth Amendment imposes those substantive limitations on the legislative power of the States and their political subdivisions. *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301 (2000) (citing *Wallace v. Jaffree*, 472 U.S. 38, 49–50 (1985)).

> The principle that government may accommodate the free exercise of religion does not supersede the fundamental limitations imposed by the Establishment Clause. It is beyond dispute that, at a minimum, the Constitution guarantees that government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which "establishes a [state] religion or religious faith, or tends to do so."

*Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)).

Thus, for his claim under the Establishment Clause, Vazirabadi must have suffered injury because of alleged government action coercing him to practice any particular religion or tending in any way to create a state-endorsed religious faith. *See id.* at 588. Or, standing under the Establishment Clause may exist when a plaintiff's injuries result from religious bias or endorsement, such as being "subjected to unwelcome religious exercises or [being] forced to assume special burdens to avoid them." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 n.22 (1982).

For the same reasons described herein, Vazirabadi's allegation that "Defendants' conduct in identifying and classifying job applicants from Muslim[ ] Middle East and African countries for extreme vetting clearly shows, under color of law, the depth of animus against this class of people" is conclusory and lacks any foundation. In addition, the allegations taken as true reflect that the online employment application system requests whether the applicant is bilingual in the following languages—Arabic, Amharic, Somali, and Swahili (FAC ¶ 22)—which, Vazirabadi admits, includes at least one language for which the general population is not Muslim (Amharic). Resp. 2.

The Court recommends that the District Court find Sahli and Boasberg are entitled to qualified immunity for Vazirabadi's failure to state a First Amendment claim and grant the motion to dismiss Vazirabadi's Fifth Claim for Relief against Defendants.

5.      Title VII National Origin Discrimination Claim (Sixth Claim)

"A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973)." *Khalik*, 671 F.3d at 1192. In this case, Vazirabadi brings his

Title VII claim for discrimination based on national origin[7] against DPS and, despite his assertions to the contrary (FAC ¶ 75), alleges no direct evidence of discrimination.

"[The] *McDonnell Douglas* ... three-step analysis requires the plaintiff first prove a *prima facie* case of discrimination." *Jones v. Okla. City Public Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010). "While the 12(b)(6) standard does not **require** that Plaintiff establish a *prima facie* case in her complaint, the elements of each alleged cause of action help to determine whether [a plaintiff] has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (emphasis added).

To establish a *prima facie* case for a failure-to-hire claim, a plaintiff must establish that (1) [he] belongs to a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, [he] was rejected; and (4) after [his] rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications." *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 982–83 (10th Cir. 2008). If Vazirabadi makes out a *prima facie* case, "[t]he burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If DPS meets that burden, "the burden then shifts back to the plaintiff to show that [his] protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

Here, DPS argues that Vazirabadi fails to meet the first requirement of a *prima facie* case[8]

---

[7]Vazirabadi states in his response brief that his "sixth [sic] Cause of Action under Title VII clearly states his discrimination was based on his national origin *and age*." Resp. 4 (emphasis added). The Court disagrees; the FAC mentions nothing about discrimination based on Vazirabadi's age (which itself is not identified), but only references DPS's position statement to the EEOC in which it allegedly "lied" about the successful applicant's age being "over 40." Because Vazirabadi fails to plead any allegations of discrimination based on his age (and there is no indication that he exhausted his administrative remedies for an age claim), the Court will not construe the FAC as bringing a claim under the Age Discrimination in Employment Act, as opposed to Title VII which does not govern age discrimination.

[8]DPS does not actually reference the first requirement of a *prima facie* case in its analysis (Mot. 12), but the Court infers that DPS argues language is not a "protected class."

because "interchanging national origin and language is a legal and logical error." Mot. 13 (citing *Napreljac v. John Q. Hammons Hotels, Inc.*, 461 F. Supp. 2d 981, 1030 (S.D. Iowa 2006)). DPS's position might be correct if Vazirabadi alleged only that DPS's profiling of Iranians through its online system for extreme vetting violated Title VII. *See, e.g., Soberal–Perez*, 717 F.2d at 41 (classification on the basis of language does not by itself "identify members of a suspect class"); *see also Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257, 262 (S.D. N.Y. 2000) (raising a triable issue of fact regarding the existence of an English-only policy will not suffice to demonstrate national origin discrimination).

However, and as DPS acknowledges (Mot. 13), Vazirabadi's allegations can be liberally construed as stating a "straight-forward" failure-to-hire claim—that is, DPS failed to hire Vazirabadi, an Iranian national who was qualified for the PIE positions, based on his national origin. *See* FAC ¶¶ 74–77; Resp. 5. Thus, the Court finds that Vazirabadi plausibly alleges the first, second, and third requirements of a *prima facie* case: (1) Vazirabadi's national origin is Iranian; (2) he applied for and was qualified for the PIE positions (based on the allegations that he was selected for three interviews with DPS officials); and (3) despite his qualifications, Vazirabadi was not selected for hire.

As for the fourth requirement stated in *Fischer*, *supra*, the allegations in this case do not fit and, thus, the Court will need to modify it as it is currently stated. *See Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) ("[T]he articulation of a plaintiff's prima facie case may well vary, depending on the context of the claim and the nature of the adverse employment action alleged."). In *Roberts v. Okla.*, 110 F.3d 74, 1997 WL 163524, at *4 (10th Cir. Apr. 8, 1997), the Tenth Circuit stated the fourth requirement for a similarly-pled failure-to-hire *prima facie* claim as follows: "(4) the defendant hired other persons possessing [the plaintiff's] qualifications who were not members

of [his] protected class."   Regarding whether the hired candidates were "not members of his protected class," the allegations in this case, taken as true, reflect that DPS hired a "28-year-old Asian male" and a "29-to-33-year old" female, Ashley S., for the open PIE positions. FAC ¶ 28. Vazirabadi fails to identify Ashley S.'s national origin, both in the FAC and in his response brief. Although an exhibit attached to the motion includes a black-and-white photograph of Ashley S., who appears to be a blonde Caucasian (FAC Ex. 8), such information is insufficient to demonstrate plausibly that Ashley S. is not Iranian.

As for whether the Asian male, "T," possessed Vazirabadi's qualifications, Vazirabadi had more than ten years of work experience, while "T" had five years of work experience. FAC Ex. 9. DPS documents attached to the FAC appear to reflect "scores" each candidate received during telephone interviews (FAC ¶ 23); Vazirabadi received a score of "9/8," and "T" received a score of "7/8." *Id.*; FAC Ex. 3. Based on these scores, DPS invited Vazirabadi and "T" for panel interviews. See FAC ¶ 24. Based on these allegations, the Court finds Vazirabadi plausibly alleges the fourth requirement for a *prima facie* case.

DPS asserts that it declined to select Vazirabadi for hire because he was "not a good team fit" for the PIE positions.  Assuming this is a legitimate, non-discriminatory reason for failure to hire, Vazirabadi must show that DPS's reason is pretext. *See Khalik*, 671 F.3d at 1192.  A document attached to the FAC and titled, Ranking Matrix, allegedly lists the names of ten potential candidates for the PIE positions, including Vazirabadi and the two hired candidates; four of the ten candidates were not selected for panel interviews and a fifth candidate declined the interview. FAC Ex. 9.  The remaining candidates were ranked "1-5," with Vazirabadi ranked as a "5" and the hired candidates ranked "1" and "2." *Id.*  DPS argues that this document confirms that the two highest ranking individuals were selected for the PIE positions; Vazirabadi counters that the document reflects he

is the highest ranked candidate. Although the document lists the apparent reason for Vazirabadi's non-selection ("not a good team fit"), he is also noted to have "good experience" and the candidate ranked third also is noted to be "not a good team fit." In addition, the Court finds that it lacks sufficient information concerning when, by whom, and for what purpose the Ranking Matrix was created. The Court finds that whether DPS's reason is pretext, considering the limited facts at this stage of the litigation, is a factual dispute which cannot be resolved under Rule 12(b)(6).

Construing the allegations liberally and taking them as true, the Court finds Vazirabadi states the elements of a Title VII failure-to-hire claim showing that DPS selected "T" rather than Vazirabadi based on Vazirabadi's national origin. Therefore, the Court recommends that the Court deny the motion to dismiss Vazirabadi's Sixth Claim for Relief as it relates to DPS's selection of "T" for hire.

## **CONCLUSION**

The Court concludes that Vazirabadi fails to state plausible constitutional claims against the Defendants; however, he states a claim under Title VII as described herein. Accordingly, the Court respectfully recommends that Judge Martinez **grant in part and deny in part** Defendants' Motion to Dismiss Amended Complaint [filed July 28, 2017; ECF No. 29], dismiss Vazirabadi's First, Second, Third, Fourth, and Fifth Claims for Relief, and dismiss the individual Defendants from the case.[9]

---

[9]Be advised that all parties shall have fourteen days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the

Dated at Denver, Colorado, this 10th day of October, 2017.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

Magistrate Judge that are accepted or adopted by the District Court. *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).