**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-1194-WJM-MEH

ALIREZA VAZIRABADI,

    Plaintiff,

v.

TOM BOASBERG, in his individual and official capacities,
TERRI SAHLI, in her individual and official capacities,
DENVER PUBLIC SCHOOLS,
JOHN AND JANE DOES 1 THROUGH 20, and
DOE ENTITIES 1 THROUGH 10, whose true names are unknown,

    Defendants.

---

**ORDER ADOPTING OCTOBER 10, 2017 RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

---

Plaintiff Alireza Vazirabadi ("Plaintiff"), proceeding *pro se*, initiated this action, alleging violations of constitutional rights, against Denver Public Schools ("DPS"), Tom Boasberg ("Boasberg"), and Terri Sahli ("Sahli"), (collectively, "Defendants"). This matter is before the Court on United States Magistrate Judge Michael E. Hegarty's Recommendation dated October 10, 2017 (ECF No. 42) ("Recommendation"), which recommends granting in part and denying in part Defendants' Motion to Dismiss (ECF No. 29) ("Motion to Dismiss"). The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Plaintiff filed a timely Objection to the Recommendation (ECF No. 48) ("Objection"). For the reasons set forth below, Plaintiff's Objection is overruled and Judge Hegarty's Recommendation is adopted in its entirety.

## I. BACKGROUND

In his First Amended Complaint (ECF No. 26) ("Complaint"), Plaintiff states that on or about August 3, 2015, Plaintiff responded to Defendants' job advertisement for two available Process Improvement Engineer ("PIE") positions. (ECF No. 26 ¶ 22.) Plaintiff registered on the DPS website to submit his resume and cover letter, and to answer an online application form. (*Id.*) The online form asked applicants about their bilingual skills and included a pull-down menu which listed Arabic, Somali, Amharic, and Swahili for applicants to choose from. (*Id.*) The application also stated, "if your language was not listed above . . . please indicate it here." (*Id.*) In response to this last question, Plaintiff entered "Farsi/Persian." (*Id.*) Plaintiff claims this identified him as Iranian. (*Id.*) Plaintiff was called back for a phone interview on August 31, 2015, and then for an in person panel interview on September 10, 2015. (*Id.* ¶¶ 23–24.)

On September 23, 2015, DPS e-mailed Plaintiff to say it had decided to hire other candidates for the two positions. (*Id.* ¶ 25.) In its Position Statement filed with the U.S. Equal Employment Opportunity Commission ("EEOC"), DPS explains that it "did not hire [Plaintiff], as he failed to exhibit strong teamwork skills." The Statement goes on to explain, "a key part of the interview is testing the candidate's ability to lead a team by having him/her facilitate a group activity. Each candidate had to facilitate a discussion on the topic of 'things to do in Denver.' [Plaintiff] did poorly during this part of the interview. Instead of facilitating a group discussion, he dictated it. He was unable to elicit comments from everyone in the group. He appeared to lecture the team, instead of drawing them together cohesively." (*Id.* ¶ 35 (citation omitted).)

"Plaintiff considers all such allegations 100% false." (*Id.* ¶ 26.) Instead, Plaintiff claims that he was not hired because his status as "bilingual in Persian/Farsi identified him as [an] Iranian national [], [which in turn,] subject[ed] him to extreme vetting by Defendants and [their] refusal to hire," despite Plaintiff having "twice the experience, and highest phone and in-person interview ratings. Defendant hired lowest rated candidates." (*Id.* ¶ 32 (internal citation omitted).) Plaintiff claims that Defendants "planted bilingual questioning into DPS online job application [because] bilingual questioning reveal[s] (1) national origin, (2) religion and (3) ethnic background of job applicants of Amharic, Ethiopian, Somalian, Swahili, Arabic, Farsi/Persian languages, for extreme vetting." (*Id.* ¶ 33 (internal emphasis omitted).)

Plaintiff alleges six causes of action arising from these facts against DPS and Sahli and Boasberg, in their official and individual capacities: (1) Fourteenth Amendment Due Process violations resulting from Defendants' "covert systematic identification of national origin, ethnic/racial and religion, under pretext of job applicants 'bilingual' questioning for extreme vetting" (*id.* at 9) ("First Claim"); (2) Fourteenth Amendment Equal Protection claims caused by Defendants' "intentional bilingual questioning, segregation and classification for extreme vetting" (*id.* at 14) ("Second Claim"); (3) Fourteenth Amendment Due Process violations stemming from "Defendants['] false statement with altered documents to EEOC against Plaintiff" (*id.* at 16) ("Third Claim"); (4) Fourteenth Amendment Due Process violation due to Defendants' "unreasonable and warrantless search by Plaintiff's extreme vetting" (*id.* at 17) ("Fourth Claim"); (5) First Amendment Establishment Clause violations (*id.* at 19)

3

("Fifth Claim"); and (6) "Discrimination, refusal to hire Plaintiff with respect to national origin" (*id.* at 21) ("Title VII claim").

## II. STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." An objection to a recommendation is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions." *Id.*

A motion under Rule 12(b)(1) is a request upon the court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Dismissal of a complaint under Rule 12(b)(1) is proper when the Court lacks subject matter jurisdiction over a claim for relief. *See SBM Site Services, LLC v. Garrett*, 2012 WL 628619, *1 (D. Colo. Feb. 27, 2012).

When a court's subject matter jurisdiction is challenged, the court may review materials outside the pleadings without converting the Rule 12(b)(1) motion to dismiss into a motion for summary judgment. *Davis ex rel. Davis v. U.S.*, 342 F.3d 1282, 1296

(10th Cir. 2003) (stating that "when a party challenges the allegations supporting subject-matter jurisdiction, the 'court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts'" (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)); *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000); *Holt*, 46 F.3d at 1003.

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

Further, the Court is mindful of Plaintiff's *pro se* status, and accordingly reads his pleadings and filings liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007). The Court,

however, cannot act as advocate for Plaintiff, who still must comply with the fundamental requirements of the Federal Rules of Civil Procedure. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991); *see also Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1188 (10th Cir. 2003).

### III. ANALYSIS

In their Motion to Dismiss, Defendants raise four main contentions.

First, they argue that Plaintiff's §1983 claims (First through Fifth Claims above) must be dismissed. According to Defendant, Plaintiff has not alleged facts establishing District liability, because a "local government unit cannot be held liable for the actions of its employees under a theory of respondeat superior." (ECF No. 29 at 4.) Additionally, Plaintiff's "§ 1983 claims against Boasberg and Sahli should be dismissed under the doctrine of qualified immunity." (*Id.* at 7.) Defendants argue that Boasberg and Sahli are entitled to qualified immunity because Plaintiff "has no property interest in the PIE position that could support a clearly established deprivation of due process" (*id.* at 8), "classification based on language does not amount to a clearly established violation of the Equal Protection Clause" (*id.* at 9), and Plaintiff's allegations also fail to "demonstrate a clearly established violation of the First Amendment" (*id.* at 10).

Second, Defendants argue that Plaintiff's Title VII Claim "must be dismissed because [Plaintiff] fails to allege a cognizable or plausible Title VII claim of national origin discrimination." Defendants point out that Plaintiff identified himself as bilingual in Farsi/Persian before the district selected him for multiple interviews—"[i]f the District intended to disqualify him because of his national origin, why would it wait until after it

6

had gone to the trouble of advancing his candidacy through several rounds of interviews?" (*Id.* at 13.)

Third, and finally, Defendants argue that Plaintiff "failed to exhaust any claim of religious discrimination." (*Id.* at 14.) According to Defendants, in his "Charge of Discrimination with the EEOC, [Plaintiff] checked the boxes for national origin and age discrimination, but did not check the box for religious discrimination." (*Id.* at 14.)

After considering the parties' briefs, Judge Hegarty recommended the dismissal of Plaintiff's First, Second, Third, Fourth, and Fifth Claims, and dismissing Boasberg and Sahli from the case. (ECF No. 42 at 22.) However, Judge Hegarty also recommended denying Defendants' Motion to Dismiss with respect to Plaintiff's Title VII claim against DPS. (*Id.*)

## A. § 1983 Official Capacity Claims Against Defendants Boasberg and Sahli

Judge Hegarty found that "Plaintiff's official-capacity claims against Boasberg and Sahli are duplicative of his claims against DPS." (ECF No. 42 at 6.) Tenth Circuit case law holds that "a section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x 943, 956 (10th Cir. 2001). According to Judge Hegarty, "[c]onsequently, where a plaintiff sues both the municipality and the municipal official in an official capacity under the same theory of recovery, courts have dismissed the official capacity claim as 'duplicative' or 'redundant' of the claim against the municipal entity." (ECF No. 42 at 6.) Therefore, Judge Hegarty recommended that "Plaintiff's claims against Defendants Boasberg and Sahli in their official capacities be dismissed." (*Id.* at 7.)

Plaintiff does not object to the Judge Hegarty's finding on this issue and the Court is persuaded by Judge Hegarty's analysis and Recommendation. Accordingly, Plaintiff's claims against Defendants Boasberg and Sahli in their official capacities are dismissed.

**B.     § 1983 Official Capacity Claims Against Defendant DPS**

Tenth Circuit case law holds that local governments can be held liable under § 1983 only for their own illegal acts, and cannot be held liable under § 1983 solely because they employ a person who violated the plaintiff's constitutional rights. (ECF No. 42 at 7 (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011); *Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 794 (10th Cir. 2014)).) Thus, the test to establish a § 1983 claim again a municipality requires that a plaintiff "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury by plausibly alleging (1) the existence of a municipal policy or custom, (2) causation, and (3) state of mind." (ECF No. 42 at 7 (quoting *Schneider v. City of Grand Juncture Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)).)

Judge Hegarty found that Plaintiff's First, Second, and Third Claims assert that DPS' online employment system violated his rights against national origin and religious discrimination by subjecting him to extreme vetting which is governed by a formal policy. (ECF No. 42 at 8.) Plaintiff's Fourth Claim alleges that DPS subjected him to a warrantless search by its "extreme vetting." (*Id.*) Judge Hegarty found that "these allegations, liberally construed, involve the same policy or custom underlying the online application system." (*Id.*) However, Judge Hegarty found that Plaintiff's Third

Claim—that DPS made false assertions and provided altered documents to the EEOC during its investigation of Plaintiff's Title VII claim—does not allege a municipal policy or custom underlying DPS's submission to the EEOC. Therefore, Judge Hegarty recommended dismissing Plaintiff's Third Claim.

In his Objection, Plaintiff contends that "[t]he underlying custom and policy that propelled all Defendants (Sahli, Boasberg and DPS) to get this low, all link back to Plaintiff's described causal link that started when: Plaintiff[] identified as a Farsi bilingual job applicant." (ECF No. 48 at 9.) Plaintiff's argument fails to counter Judge Hegarty's finding, because it does not allege that DPS had a policy or custom of submitting false assertions and altered documents to the EEOC. Accordingly, the Court adopts Judge Hegarty's recommendation on this issue and dismisses Plaintiff's Third Claim against DPS.

Judge Hegarty's Recommendation went on to consider whether Plaintiff's First, Second, Fourth, and Fifth Claims are plausible for a municipal liability claim. (ECF No. 42 at 9.) "Where a Plaintiff seeks to impose municipal liability on the basis of a single incident, the Plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." (ECF No. 42 at 9 (citing *Moss v. Kopp*, 559 F. 3d 1155, 1169 (10th Cir. 2009)).) Here, Judge Hegarty found that "[Plaintiff's] allegations identify only a single incident of discrimination—Defendant Sahli's extreme vetting based on national origin and religion—and, thus, [Plaintiff] must allege that the system itself is illegal and was implemented by a person with authority to make policy decisions on behalf of DPS." (ECF No. 42 at 9.) Judge Hegarty recommended finding that

9

Plaintiff "plausibly alleges the existence of a municipal policy sufficient to meet the first requirement," given that it is still early in the litigation and no discovery has occurred. (*Id.* at 9–10.)

The Court agrees with Judge Hegarty's recommendation on this issue and finds that Plaintiff has plausibly alleged the existence of an illegal municipal policy.

The Recommendation next considered whether Plaintiff plausibly alleged that his stated injuries were caused by the extreme vetting which resulted from information obtained by DPS's online employment application system. (*Id.* at 10.) To satisfy this requirement, Plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." (*Id.*) Judge Hegarty found that Plaintiff's allegations

> do not demonstrate the alleged challenged practice—profiling applicants for special investigation—is closely related to DPS's failure to hire him . . . . His baseless assertion that 'all of a sudden, out of nowhere, he got rejected' is insufficient to demonstrate that Sahli engaged in 'extreme' vetting of his application, particularly considering the ranking he received following his in-person interview, which contrary to [Plaintiff's] contention, reflects he ranked last (5 out of 5) of those selected for in-person interviews.

(*Id*. at 10–11.) Accordingly, Judge Hegarty recommended that Plaintiff's First, Second, Third, Fourth, and Fifth Claims for relief be dismissed against DPS. (*Id.* at 11–12.)

Plaintiff addresses this issue in his Objection. (ECF No. 48 at 1.) He explains that "[i]n 2010, based on a baseless and totally made-up incident an arrest warrant issued against the Plaintiff . . . . To clear his name, as a first step, few days later Plaintiff presented himself for couple of hours at the Denver PD HQ (Sheriff Dep.) to be

handcuffed, photographed, fingerprinted and then released with $500 bond. Short time later, his case dismissed, when the accuser failed to show up for the hearing." (*Id.* at 2.)

> Plaintiff strongly believes by identifying himself as a Farsi/Persian bilingual—Iranian—job applicant, this identification flagged him in the Defendants' online application system, where Defendant Sahli, between 3rd to 10th of September 2015, with her position, access and authority, through Colorado Dept. of Education database system, she accessed and viewed Plaintiff's sealed record . . . . Based on Defendant Sahli's unwarranted unsealing, which stated as a dismissed case—not guilty of anything—he was refused a perfectly matched and qualified job.

(*Id.*) The Court finds that Plaintiff's claim that Defendant Sahli viewed Plaintiff's sealed arrest warrant prior to the interview and refused to hire him on that basis to be speculative. However, even if true, the Court is not convinced that Sahli's viewing of Plaintiff's arrest record constitutes a direct link between the alleged profiling for extreme vetting and the rejection of his application for § 1983 purposes. Accordingly, the Court adopts Judge Hegarty's Recommendation concerning this issue and Plaintiff's First, Second, Third, Fourth, and Fifth Claims are dismissed against DPS.

## C. Individual Capacity Claims

In his Recommendation, Judge Hegarty found that Boasberg and Sahli are entitled to qualified immunity with respect to Plaintiff's claims and thus all claims brought against them in their individual capacities should be dismissed.

When a Defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d

11

1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). The Supreme Court affords district courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Judge Hegarty first considered whether plaintiff's First, Second, Third, Fourth, and/or Fifth Claims stated plausible violations of his constitutional rights.

A plaintiff cannot allege a violation of either procedural or substantive due process if he does not first show that he has a protected property right. *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192 (10th Cir. 2009) (citing *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). "Protected property interests arise, not from the Constitution, but from state statutes, regulations, city ordinances, and express or implied contracts." *Dill v. City of Edmond, Okla.*, 155 F.3d 1193, 1206 (10th Cir. 1998); *see also O'Gorman v. City of Chicago*, 777 F.3d 885, 890 (7th Cir. 2015) (same). The Tenth Circuit has "recognized that 'if state statutes or regulations place substantive restrictions on a government actor's ability to make personnel decisions, then the employee has a property interest' protected by the procedural due process clause." *Potts*, 551 F.3d at 1192 (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)).

Plaintiff claims that his property interest in the PIE position arises from his legitimate claim of entitlement to the position based on his having been ranked higher than other candidates following the interviews. The Recommendation states that, "[e]ven taking these allegations as true, [Judge Hegarty] rejects [Plaintiff's] argument as not supported by prevailing law. [Plaintiff] fails to identify any 'rights' he might have that were 'created by state statutes, state or municipal regulations or ordinances, or contracts' with DPS to be hired for the PIE positions. Moreover, he has alleged no 'substantive restrictions on a DPS official's ability to make personnel decisions' with respect to hiring for the PIE positions." (ECF No. 42 at 13–14.) Thus, because Plaintiff failed to show that "he possessed a protected property right in the PIE positions, [Judge Hegarty] recommend[ed] that the District Court find Sahli and Boasberg are entitled to qualified immunity for [Plaintiff's] failure to state his due process claims and grant the motion to dismiss [Plaintiff's] First and Third Claims for relief against the Defendants." (*Id.* at 14.)

The Recommendation then considered Plaintiff's Second Claim alleging violations of his Fourteenth Amendment right to Equal Protection.

> To state a claim for an equal protection violation, a plaintiff must allege that a government actor intentionally discriminated against him or her on the basis of a suspect class. *Lobato v. N.M. Env't Dep't, Envtl. Health Div.*, 838 F. Supp. 2d 1213, 1223 (D.N.M. 2011) (citing *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999)); *see also Ingram v. Cooper*, 163 F. Supp. 3d 1133, 1139 (N.D. Okla. 2016) ("To establish a violation of the Equal Protection Clause, a plaintiff must allege that a defendant acted with the intent to discriminate against the plaintiff because of the plaintiff's protected status."). Suspect classifications include those based on national origin. *Lobato*, 838 F. Supp. 2d at 1223 (citing *Edwards v. Valdez*, 789 F.2d 1477, 1482 (10th Cir.

> 1986)); *Ingram*, 163 F. Supp. 3d at 1139 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985) and *Ramirez v. Dep't of Corrs.*, 222 F.3d 1238, 1243 (10th Cir. 2000)).

(*Id.* at 15.)

Here, Judge Hegarty found that Plaintiff failed to allege the requisite intent. (*Id.* at 16.) "[Plaintiff's] allegations that Sahli engaged in 'extreme' vetting of [Plaintiff's] application through 'access to various online databases' have no foundation and are merely speculative. [Plaintiff's] other allegations, taken as true, demonstrate that DPS officials selected [Plaintiff] for a telephone interview, a panel interview, and a final interview with Sahli, all the while knowing that [Plaintiff] spoke 'Farsi/Persian' based on his answer in the initial online application." (*Id.*) Because Judge Hegarty found that Plaintiff has failed to state an equal protection claim based on Plaintiff's failure to plausibly allege an intent to discriminate against the suspect class, he found that Sahli and Boasberg were entitled to qualified immunity. Accordingly, he recommended that the Court dismiss Plaintiff's Second Claim.

The Recommendation next turned to Plaintiff's Fourth Claim, which asserts a Fourth Amendment warrantless search claim. "A search subject to Fourth Amendment protection occurs 'when the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *Mimics, Inc. v. Village of Angel Fire*, 394 F.3d 836, 842 (10th Cir. 2005) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). "[E]xcept in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." *Id.* (quoting *Camara v. Mun. Ct.*, 387 U.S. 523, 528–29 (1967)).

Here, Judge Hegarty found that "the allegations, taken as true, show only that [Plaintiff] *supposes* that Sahli engaged in an 'out-of-the-norm' background check; the allegations reflect no indication that such 'extreme' check actually occurred. [Plaintiff's] assertion that 'all circumstantial evidence leads to Terri Sahli's role and her access to restricted databases to subject Plaintiff to extreme vetting' is pure speculation and insufficient to demonstrate that the 'warrantless search' [Plaintiff] alleges plausibly occurred." (*Id.* at 17 (emphasis in original).) Because Plaintiff failed to show that a constitutional violation occurred, Sahli and Boasberg are entitled to qualified immunity with respect to Plaintiff's Fourth Claim. (*Id.*) Accordingly, Judge Hegarty recommended that the Court dismiss Plaintiff's Fourth Claim against Boasberg and Sahli. (*Id.*)

To conclude its analysis of Plaintiff's individual capacity claims, the Recommendation considered Plaintiff's Fifth Claim, which alleges a violation of the First Amendment Establishment Clause. To bring an Establishment Clause claim, a plaintiff must have suffered injury because of alleged government action coercing him to practice any particular religion or tending in any way to create a state-endorsed religious faith." *Lee v. Weisman*, 505 U.S. 577, 587 (1992). Standing under the Establishment Clause may exist when a Plaintiff's injuries result from religious bias or endorsement, such as being "subjected to unwelcome religious exercises or [being] forced to assume special burdens to avoid them." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 n.22 (1982).

Here, Judge Hegarty found that "[Plaintiff's] allegation that 'Defendants' conduct

in identifying and classifying job applicants from Muslim[ ] Middle East and African countries for extreme vetting clearly shows, under color of law, the depth of animus against this class of people' is conclusory and lacks any foundation. In addition, the allegations taken as true reflect that the online employment application system requests whether the applicant is bilingual in the following languages—Arabic, Amharic, Somali, and Swahili—which, [Plaintiff] admits, includes at least one language for which the general population is not Muslim (Amharic)." (*Id.* at 18 (quoting ECF No. 26 ¶ 22).) Accordingly, Judge Hegarty found that Plaintiff failed to state a constitutional violation and thus, Defendants are entitled to qualified immunity. He therefore recommended that Plaintiff's Fifth Claim be dismissed against Defendants.

Plaintiff does not address qualified immunity at all in his Objection. In the absence of a timely and specific objection, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The Court concludes that the Recommendation's analysis was thorough and sound, and that there is no clear error on the face of the record. Accordingly, the Court adopts Judge Hegarty's Recommendation with respect to Plaintiff's First, Second, Third, Fourth, and Fifth Claims brought against Defendants Boasberg and Sahli in their individual capacities.

**D.     Title VII Claim**

To establish a *prima facie* case for a failure-to-hire claim, a plaintiff must establish that "(1) [he] belongs to a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, [he] was rejected; and (4) after [his] rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications." *Fischer v. Forestwood Co., Inc.*, 525 F.3d 972, 982–83 (10th Cir. 2008). In this Circuit, where appropriate, the fourth requirement may be established by showing that "the defendant hired other persons possessing [the plaintiff's] qualifications who were not members of his protected class." *Roberts v. Okla.*, 110 F.3d 74, 1997 WL 163524, at *4 (10th Cir. Apr. 8, 1997). If the plaintiff makes out a *prima facie* case, "[t]he burden then shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If DPS meets that burden, "the burden then shifts back to the plaintiff to show that [his] protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

Here, Judge Hegarty found "that [Plaintiff] plausibly allege[d] the first, second, and third requirements of a *prima facie* case: (1) [Plaintiff's] national origin is Iranian; (2) he applied for and was qualified for the PIE positions (based on the allegations that he was selected for three interviews with DPS officials); and (3) despite his qualifications, [Plaintiff] was not selected for hire." (ECF No. 42 at 20.) As to the fourth requirement, "[r]egarding whether the hired candidates were 'not members of his protected class,' the allegations in this case, taken as true, reflect that DPS hired a '28-year-old Asian male' [('T')] and a '29-to-33-year old' female, Ashley S., for the open PIE

17

positions." (ECF No. 42 at 21.) Judge Hegarty found that Plaintiff failed to demonstrate plausibly that Ashley S. is not Iranian. (*Id.*) The Recommendation also noted, however, that Plaintiff had twice as much work experience as T, who was selected, and both Plaintiff and T received similar interview scores. (*Id.*) Thus, construing the allegations liberally and taking them as true, the Recommendation found that Plaintiff had stated the elements of a Title VII failure-to-hire claim by showing that DPS had allegedly selected T rather than Plaintiff based on Plaintiff's national origin. (*Id.* at 22.) Accordingly, Judge Hegarty recommended that the Court deny the Motion to Dismiss with respect to Plaintiff's Title VII claim as it relates to the DPS's selection of T for hire.

In his Objection, Plaintiff stated that he "confirms Ashley S. [] is not Iranian. She is Caucasian, American born of European descent." (ECF No. 48 at 3.) However, he does not specifically object to Judge Hegarty's analysis or findings regarding the Title VII claim. Nor, importantly, did *Defendants* file any objection regarding the recommended denial of their Motion to Dismiss with respect to Plaintiff's Title VII claim. Accordingly, "the district court may review the magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). The Court concludes that Judge Hegarty's analysis was thorough and sound, and that there is no clear error on the face of the record. Therefore, the Court adopts Judge Hegarty's Recommendation regarding Plaintiff's Title VII claim and

denies Defendants' Motion to Dismiss with respect to this claim.[1]

Accordingly, Judge Hegarty's Recommendation is adopted in its entirety, Plaintiff's Objection is overruled, and Defendants' Motion to Dismiss is granted with respect to Plaintiff's § 1983 claims against all Defendants and denied with respect to Plaintiff's Title VII claims against DPS.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiff's Objection to the Recommendation of United States Magistrate Judge (ECF No. 48) is OVERRULED;

2. The Recommendation of United States Magistrate Judge (ECF No. 42) is ADOPTED in its entirety;

3. Defendants' Motion to Dismiss (ECF No. 29 is GRANTED IN PART and DENIED IN PART, as follows:

    a. Defendants' Motion to Dismiss Amended Complaint (ECF No. 29) is GRANTED with respect to Plaintiff's First, Second, Third, Fourth, and Fifth Claims *with prejudice*;

    b. Defendants Boasberg and Sahli are dismissed from the litigation; and

    c. Defendants' Motion to Dismiss Amended Complaint (ECF No. 29) is DENIED with respect to Plaintiff's Title VII Claim against Defendant DPS.

---

[1] To be clear, the Court neither adopts nor rejects Judge Hegarty's analysis with regard to "Ashley S." because the Court reads that analysis as immaterial to his overall Recommendation on this claim. The important point here is that the Title VII claim will go forward.

Dated this 30th day of March, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge